**JEWEL RECOVERY, L.P., Plaintiff,**

v.

**Aron S. GORDON, et al., Defendants.**

**No. 3:94–CV–1052–X.**

United States District Court,
N.D. Texas,
Dallas Division.

April 15, 1996.

Allan B. Diamond, Hughes & Luce, L.L.P., Dallas, TX, for Plaintiff.

Ernest T. Fagari, Jr., Figari & Davenport, Dallas, TX, and Henry W. Simon, Jr., Simon, Anisman, Doby & Wilson, Ft. Worth, TX, for Defendants.

Craig W. Budner, Hughes & Luce, L.L.P., Dallas, TX, for Plaintiff.

Charles Ray Haworth, Owens Clary & Aiken, Dallas, TX, for Defendant.

## ORDER

KENDALL, District Judge.

Before the Court are Judge Felsenthal's Report to District Court, filed February 28, 1996; the Gordon Defendants' Objections, filed March 12, 1996; Plaintiff's Response, filed March 22, 1996; the Gordon Defendants' Reply, filed April 8, 1996; and Plaintiff's Motion to Strike Reply, filed April 11, 1996.

Plaintiff's Motion to Strike Reply is DENIED.

The Court hereby adopts in its entirety Judge Felsenthal's report and recommendations. It shall be the ruling of this Court that:

1. The Gordon Defendants' Motion for Summary Judgment is DENIED.

2. Defendant Houlihan Lokey's Motion for Judgment on the Pleadings is GRANTED in part and DENIED in part. To the extent that Plaintiff's allegations against Defendant Houlihan Lokey are negligence claims, challenging the quality of the services rendered by Houlihan Lokey, those claims are dismissed. Plaintiff's remaining claim against Houlihan Lokey is limited to whether Gordon, at a time when it was or became insolvent, paid for services rendered to Zale for which it did not receive fair consideration.

3. The Gordon Defendants' Motion to Dismiss Claims in Count 15 of the complaint is DENIED.

In addition, all parties had been granted an extension of time in which to file the Joint Status Report required by this Court. Now that all pending matters have been resolved, the parties must file the Joint Status Report with 15 days of the date of this Order.

SO ORDERED.

## REPORT TO DISTRICT COURT

STEVEN A. FELSENTHAL, Bankruptcy Judge.

The Gordon Defendants move the court for summary judgment on the fraudulent conveyance cause of action based on 11 U.S.C. § 546(e). Houlihan Lokey Howard & Zukin, Inc., moves the court for judgment on the pleadings. By orders entered November 6,

1995, the United States District Court for the Northern District of Texas referred these motions to the United States Bankruptcy Court for report and recommendation. The bankruptcy court conducted a hearing on the motions on January 5, 1996.

The Gordon Defendants also move the court to dismiss count 15 of Jewel Recovery's second amended original complaint. By order entered January 5, 1996, the United States District Court for the Northern District of Texas referred the motion to the United States Bankruptcy Court for report and recommendation. The bankruptcy court conducted a hearing on that motion on February 15, 1996. The bankruptcy court respectfully submits this report and recommendation to the United States District Court.

### Gordon Defendants' Motion for Summary Judgment

In its first amended original complaint, Jewel Recovery alleges that a transfer to the Gordon Defendants constitutes an avoidable fraudulent conveyance under 11 U.S.C. § 544, recoverable by judgment under § 550. The Gordon Defendants move for summary judgment, asserting that 11 U.S.C. § 546(e) bars recovery from them.

■ As a threshold issue, the Gordon Defendants move to strike portions of the affidavit of Dolph B.H. Simon and the entire affidavit of Robert W. Hamilton. The Gordon Defendants object, based on the "best evidence rule," to the portions of the Simon affidavit that purport to describe the contents of the exhibits attached to it. Fed. R.Evid. 1002. As for the Hamilton affidavit, the Gordon Defendants contend that it is irrelevant; contains hearsay; is not based on the affiant's personal knowledge; urges a variety of inadmissible legal conclusions; and presents argument instead of fact, all in contravention of Fed.R.Civ.P. 56, Bankruptcy Rule 7056, and the Federal Rules of Evidence.

Because the summary judgment motion turns on the nature of the transaction between the Gordon Defendants and the debtors, which is resolved by written documents, the authenticity of which does not appear to be contested, the court recommends that the affidavits be used to the extent necessary to consider these documents for summary judgment purposes. Accordingly, the court recommends the motions to strike be denied.

The transaction concerns a "tender offer" made by Gordon Jewelry Acquisition Company (GJA) for all outstanding shares of Gordon Jewelry Corporation. GJA selected First Chicago Trust Company of New York to act as depository for the stock certificates and funds involved in the tender offer. GJA and certain Gordon stockholders (the Family Stockholders), whose aggregate shares comprised approximately 53% of Gordon's outstanding shares, agreed that the Family Stockholders would tender their shares pursuant to the tender offer.

Ten days before the tender offer closed, First Chicago sent representatives to Gordon's corporate office in Houston to take physical possession of the Family Stockholder stock certificates. After the tender offer expired, First Chicago delivered the certificates to GJA and distributed $36.75 per share to the beneficial owners.

Jewel Recovery argues that this transaction was a negotiated, contractual arrangement between principals, assisted by an escrow agent, for the direct, physical transfer of stock certificates to effectuate a leveraged acquisition of a family controlled, public corporation. Jewel Recovery further argues that this type of transaction, negotiated and accomplished completely outside the clearance and settlement process, is not the type of transaction afforded protection under 11 U.S.C. § 546(e). Jewel Recovery maintains that the transaction fails to satisfy the express language, spirit and purpose of the statute.

Section 546(e) provides:

Notwithstanding sections 544, 545, 547, 548(a)(2) and 548(b) of this title, the trustee may not avoid a transfer that is a margin payment, as defined in section 101, 741, or 761 of this title, or settlement payment, as defined in section 101 or 741 of this title, made by or to a commodity broker, forward contract merchant, stockbroker, financial institution, or securities clearing agency, that is made before the

commencement of the case, except under section 548(a)(1) of this title.

11 U.S.C. § 546.

The Gordon Defendants contend that this section, commonly known as the "stockbroker defense," bars a judgment for recovery for a fraudulent conveyance against them. Jewel Recovery counters that the section only applies to transactions in the public market (i.e., transactions that implicate the "clearance and settlement" process).

In brief, the court understands that the clearance and settlement process involves customers placing orders to buy or sell stock with brokers who, in turn, place orders to buy or sell with clearing members who, in turn, place orders to buy or sell with clearing agencies. A clearing agency simultaneously debits the selling clearing member's number of shares sold and credits the purchase price, while crediting the buying clearing member's number of shares bought and debiting the purchase price.

■ Construction of the Bankruptcy Code is a holistic endeavor. *United Savings Ass'n of Texas v. Timbers of Inwood Forest Assoc., Ltd.*, 484 U.S. 365, 371, 108 S.Ct. 626, 630, 98 L.Ed.2d 740 (1988). The court must consider the particular statutory language, the design of the statute as a whole and its object and policy. *Kelly v. Robinson*, 479 U.S. 36, 43, 107 S.Ct. 353, 357, 93 L.Ed.2d 216 (1986). Where the statutory scheme of the Code is coherent and consistent, the court generally need not inquire beyond the statute's language. *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 240–41, 109 S.Ct. 1026, 1029–30, 103 L.Ed.2d 290 (1989). But, where the language is not consistent with the statutory scheme, *Timbers* instructs that the section must be harmonized with the whole.

■ The plain language of § 546(e) would appear to apply to this transaction. Any payments received by the Family Stockholders (the Gordon Defendants) in connection with the tender offer constitute settlement payments made by or to a financial institution, First Chicago, before the commencement of the bankruptcy cases of Gordon and Zale Corporations.

■ However, that application is not consistent with the statutory scheme. In Chapter 5 of the Bankruptcy Code, Congress determined that certain categories of transfers, otherwise permitted under non-bankruptcy law, could be avoided, and the property or its monetary value recovered by a bankruptcy trustee for the benefit of all creditors. Congress determined that a few individuals should not be allowed to benefit from transfers by an insolvent entity at the expense of the many. Rather, Congress intended equal shares of the bankruptcy estate for creditors of equal rank. *See* House Report at 16, 177–78, 220; *Young v. Higbee Co.*, 324 U.S. 204, 210 n. 8, 65 S.Ct. 594, 597 n. 8, 89 L.Ed. 890 (1945). But for § 546(e), this transfer, if proved to be a fraudulent conveyance, would fall within the scheme of Chapter 5.

Congress has further determined, however, that avoiding certain types of transfers could have an unintended impact on the functioning of the marketplace for securities and commodities. The purpose of § 546(e) is "to minimize the displacement caused in the commodities and securities markets in the event of a major bankruptcy affecting those industries." H.Rep. No. 420, 97th Cong., 2d Sess. 1 (1982), reprinted in 1982 U.S.C.C.A.N. 583. Congress sought to prevent "the insolvency of one commodity or security firm from spreading to other firms and possibly threatening the collapse of the affected market." *Id.* The Gordon Defendants' transaction was not the sort of transaction contemplated by Congress when it enacted the protections of § 546(e).

The Gordon Defendants' transaction was a private transaction which did not implicate the clearance and settlement process. Representatives of First Chicago, acting functionally as an escrow agent, traveled to Houston and physically took possession of the Gordon Defendants' stock certificates. First Chicago subsequently transferred the payment for the stock directly to the Gordon Defendants. No stockbroker, clearing member or clearing agency participated in the transaction and no guarantees were made by third parties to facilitate the transaction.

■ The affirmative application of § 546(e) to this transaction would serve to sanction the practice of structuring private stock purchases in an effort to circumvent the avoidance section, merely by utilizing a financial institution. Private transactions lack the impact on the public market trading systems that Congress intended to protect by § 546(e). Accordingly, applying the plain language of § 546(e) to this private transaction conflicts and is inconsistent with Congress' statutory scheme in Chapter 5 of the Code. The court therefore recommends that the language of § 546(e) be read to apply to settlement payments in the clearance and settlement process in the public market. That reading makes the section consistent and coherent with the Code when read as a whole, while still accomplishing the object and policy of the section.

This court accordingly recommends that the United States District Court hold that § 546(e) does not apply to this transaction and deny the motion.

The Third, Ninth and Tenth Circuits have concluded that the term "settlement payments" within § 546(e) should be read broadly. *See Bevill, Bresler & Schulman v. Spencer Sav. & Loan,* 878 F.2d 742, 745 (3rd Cir.1989) (prepetition transfers of federal government securities repurchase agreements by securities dealer to purchasers constitutes unavoidable "settlement payments"); *In re Kaiser Steel Corp.,* 952 F.2d 1230, 1239–41 (10th Cir.1991), *cert. denied,* 505 U.S. 1213, 112 S.Ct. 3015, 120 L.Ed.2d 887 (1992) (consideration paid to shareholders for their stock in connection with a leveraged buyout constitutes unavoidable "settlement payments"); *In re Comark,* 971 F.2d 322, 324 (9th Cir.1992) (debtor's return of government securities that had served as additional margin in repo transaction between debtor and other party, upon cancellation of transaction, constitutes unavoidable "settlement payments").

The Gordon Defendants contend that *In re Kaiser Steel Corp.* (Kaiser II) is the seminal case on the settlement payment issue. In *Kaiser II,* Kaiser Steel Corporation underwent a leveraged buyout, resulting in its merger into a new corporation. The LBO

was funded by Kaiser Steel's cash reserves and a loan secured by Kaiser Steel's assets. From the outset of the transaction, holders of Kaiser Steel common stock tendered their shares to Kaiser's disbursing agent, Bank of America, which distributed cash and preferred stock in the new corporation. Among the holders of this common stock were customers of Charles Schwab & Company, Inc. Most of the Schwab certificates were in the possession of the Depository Trust Company (DTC), a securities clearing agency. In conjunction with the tender, DTC tendered the Schwab certificates to Bank of America, and received the cash and stock of the surviving entity. DTC subsequently transferred the money to the National Securities Clearing Corporation (NSCC), which sponsors Schwab's participation in DTC. NSCC then transferred the money to Schwab. Within a few days of receiving the funds, Schwab then transferred the money to the owners of Kaiser Steel stock.

On the facts of *Kaiser II,* the Tenth Circuit confronted a transaction involving settlement payments in the clearance and settlement process in the public market. This court respectfully suggests *Kaiser II* should be read in that context. Here, Jewel Recovery seeks to avoid only a private transaction with the Gordon Defendants. Jewel Recovery has not brought an avoidance action against former Gordon shareholders who sold their stock in a corresponding public market transaction in the clearance and settlement process. Jewel Recovery concedes that § 546(e) would apply to them.

Since the District Court is not bound by *Kaiser II,* this court recommends that *Kaiser II* be read in context and that § 546(e) not be applied to reach private transactions which Congress did not express a policy reason to shield from the otherwise applicable avoidance provisions of Chapter 5. To hold otherwise would be inconsistent with the statutory scheme.

■ Alternatively, by raising the § 546(e) issue now, the court must assume that Jewel Recovery will prevail on establishing the elements of an avoidable fraudulent conveyance under the objective standard. 11 U.S.C.

§ 548(a)(2).[1] The Gordon Defendants vigorously contest the elements of the fraudulent conveyance. Counsel outlined their defense at the hearing. Unless Jewel Recovery prevails on the merits of the elements of the fraudulent conveyance, the issue of § 546(e) is technically not ripe for adjudication. Accordingly, this court alternatively recommends that the District Court deny the motion as premature.

### Houlihan Lokey Howard & Zukin, Inc., Motion

■ Houlihan Lokey Howard & Zukin, Inc., provided consulting services to Zale for a fee of roughly $100,000. Houlihan Lokey contends that the Jewel Recovery complaint amounts to an action for negligence.

At the hearing, Jewel Recovery argued that Gordon paid for the services Houlihan Lokey rendered to Zale. Consequently, Jewel Recovery contends that Gordon did not receive fair value for the services at a time when it was or became insolvent. Houlihan Lokey counters that Zale borrowed the money to pay its fees from Gordon. That issue cannot be determined from the pleadings. Accordingly, this court recommends that the motion be denied.

At the hearing, the bankruptcy court recognized that if Jewel Recovery prevailed on that issue, then upon payment of the $100,000 to Gordon, Houlihan Lokey would have a claim of $100,000 against Zale for unpaid fees for services rendered. Jewel Recovery, under the confirmed Zale plan, would then have to pay a claim based on those fees using the percentage recoveries for other similarly situated creditors. Thus, this dispute should be narrowed and lends itself to prompt resolution by mediation or adjudication.

■ However, to the extent that the complaint does challenge the quality of services rendered, it should be dismissed. That is not a fraudulent conveyance, but rather a negligence cause of action.

Accordingly, this court recommends that the District Court grant the motion in part and deny it in part, limiting the issue to whether Gordon, at a time when it was or became insolvent, paid for services rendered to Zale for which it did not receive fair consideration.

### Gordon Defendants' Motion to Dismiss

■ In its second amended original complaint, Jewel Recovery alleges that by their actions in acquiescing in, encouraging, and accomplishing the LBO and merger, the Gordon Defendants stripped Gordon of its assets in derogation of the rights of Gordon's creditors, thereby invading the corporate trust fund and wasting corporate assets. The Gordon Defendants move to dismiss, urging that count 15 is merely a restatement of Jewel Recovery's earlier claims for denuding the corporation and breach of fiduciary duty, which the District Court dismissed.

At the February 15 hearing, Jewel Recovery argued that it is not attempting to reurge the earlier claims dismissed by the District Court. To the contrary, Jewel Recovery filed a motion for reconsideration of those claims which the District Court denied by order entered February 26, 1996. Rather, Jewel Recovery maintains it has alleged a different cause of action under Delaware's corporate trust fund doctrine. Unlike the dismissed claim for relief, which involved an alleged breach of the Gordon Defendants' fiduciary duties to the corporation in connection with pursuing the highest bidder, this claim examines the financing—the manner by which the purchase itself was implemented—under a different doctrine.

■ Delaware law recognizes that when a corporation becomes insolvent, the assets of the corporation become a trust for the benefit of the corporation's creditors. *Bovay v. H.M. Byllesby & Co.*, 38 A.2d 808, 813 (Del.1944). The corporate directors then hold a fiduciary duty as trustees to protect the assets for the creditors. *Geyer v. Ingersoll Publications Co.*, 621 A.2d 784 (Del.Ch. 1992). The breach of that duty gives rise to

---

1. The Gordon Defendants conceded at argument that if a transaction had been structured to get around an otherwise avoidable objective fraudulent conveyance by using a financial institution to trigger § 546(e), they may be subject to scrutiny for a subjective fraud on creditors. 11 U.S.C. § 548(a)(1).

a claim that can be pursued by the creditors. *Id.* Delaware may have expanded this duty, as distinguished from the directors' fiduciary duty to the corporation, when the corporation operates within a zone of insolvency. *In re Buckhead America Corp.,* 178 B.R. 956, 968–69 (D.Del.1994). Delaware does not appear to require that the corporation cease doing business or be incapable of conducting its business. *See,* David A. Drexler et al., *Delaware Corporation Law and Practice* (1996) § 15.15, at 15–107 (recognizing a Delaware statute applicable to some insolvent corporations in actual dissolution); *compare, Fagan v. La Gloria Oil & Gas Co.,* 494 S.W.2d 624 (Tex.Civ.App.—Houston [14th Dist.] 1973, no writ) and 15 *Tex.Jur.3d,* Corporations § 389 (3d ed. 1981) (analyzing the Texas trust fund doctrine).

The complaint alleges that Gordon's purchase was financed by a series of bridge loans by the NCNB Bank Group, payable by Gordon and secured by substantially all of Gordon's assets. Jewel Recovery alleges that Gordon received little, if any, consideration for the encumbrance of all of its assets to secure the $350 million bridge loan, and little, if any, consideration for its promise to repay. Jewel Recovery alleges that the debt required to finance this acquisition rendered Gordon insolvent and unable to effectively operate its business. Jewel Recovery further alleges that the Gordon Defendants knew of or should have known that the consummation of the LBO, with Gordon liable for the bank debt and with Gordon's assets pledged to secure that debt, would immediately result in the post-LBO Gordon's insolvency, creating a trust. The complaint asserts that as a result, Gordon's assets became subject to a corporate trust fund for the benefit of creditors. Jewel Recovery further alleges that the Gordon Defendants breached their duty resulting from that trust fund, damaging the corporation's creditors.

In Delaware, "the extent to which directors of putatively insolvent corporations can continue to advance the interests of stockholders without violating their fiduciary duty to the corporate entity or to creditors remains hazy...." *Delaware Corporation*

*Law and Practice,* § 15.15, at 15–106. Creditor causes of action have been transferred to Jewel Recovery. While the extent of the duty for the trust may be hazy under Delaware's current law, a federal court in Delaware has permitted a complaint alleging actions for directors' benefit, rendering a corporation insolvent, with a gross disparity of consideration, and a breach of fiduciary duty to creditors, to survive a Rule 12(b)(6) motion. *Buckhead,* 178 B.R. at 968–69.

Motions to dismiss are viewed with disfavor. *Intake Water Co. v. Yellowstone River Compact Comm.,* 590 F.Supp. 293 (D.C.Mont.1983), *aff'd* 769 F.2d 568 (9th Cir.), *cert. denied,* 476 U.S. 1163, 106 S.Ct. 2288, 90 L.Ed.2d 729 (1986). Accordingly, a complaint cannot be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). In reviewing a Rule 12(b)(6) motion, the court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.,* 677 F.2d 1045, 1050 (5th Cir.1982), *cert. denied,* 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983). The facts pled in the plaintiff's complaint, however, must be specific and not merely conclusory. *Guidry v. Bank of LaPlace,* 954 F.2d 278, 281 (5th Cir.1992).

On a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the court cannot conclude that Jewel Recovery cannot prove a set of facts necessary to establish a claim for relief under Delaware's corporate trust fund doctrine. Accordingly, this court recommends that the District Court deny the motion.

### Recommendation

The District Court should deny the Gordon Defendants' motion for summary judgment.

The District Court should deny the Houlihan Lokey motion in part, but grant it in part.

The District Court should deny the Gordon Defendants' motion to dismiss count 15.

Dated: *February 28, 1996*